United States v. Isbell Appeal 24-3034. Good morning, Mr. Roy. Thank you, Judge. Good morning. May it please the Court. Opposing counsel, Attorney Michael Roy on behalf of Appellant Israel Isbell. As discussed in the briefs, this is a good opportunity for this Court to clarify some of the standards surrounding supervised release conditions. Since Flores, not too many of these cases are coming with a big package of preserved conditions. So I think this is a good opportunity where Isbell did make a point to preserve many objections to individual conditions. And we're asking this Court to strike three of those conditions. We think that the computer monitoring condition is unconstitutionally vague, that the medical marijuana condition improperly delegates authority to a non-Article III entity, and that the substance abuse treatment condition suffers from a couple problems. I plan to start with the computer monitoring condition, but I'm happy to jump to anything. Mr. Roy, wouldn't your proposed modification of the computer monitoring allow your client to use a smart TV without monitoring? It would, maybe some smart TVs, but I think it would be a case-by-case situation. How is that vague? The district courts specifically, when asked, said he was not allowed to use smart TVs. And you're saying that the written condition is vague and he should be able to allow to use smart TVs in certain circumstances. How is the condition vague when the district courts specifically addressed your smart TV point? I have a couple of responses to that, Judge. First is the judge had the opportunity in response to the objection to say, okay, we'll add a no smart TV provision to his conditions. And the judge just did not do that. Well, the court didn't think it was necessary because of the definition of computer. Right, and I think, though, that it's not clear that the definition of computer necessarily includes all smart TVs, some TVs. Why wouldn't the court's explanation that it included smart TVs make it clear and not vague that computer includes smart TVs? I think partially because the term smart TV is itself vague. I think a good hypothetical would be... I think that's a new argument. I don't think you argued smart TV. I did argue in the reply, yes, that the term smart TV is also vague in response to the government's argument that the judge explicitly said smart TVs are included. And I think set-top boxes is the example I gave in the brief, the reply brief, which I'm not sure if that would count as a smart TV or not once it's connected to the TV. The judge said that a solution to Mr. Isbell using, being able to watch cable news would be traditional cable instead. Traditional cable often comes with a set-top box where even if the television broadcast is not being done over the Internet, it's still pulling Internet content either through listings of programming, like the TV Guide channel, now is going to be generally Internet content, video on demand in most set-top boxes. It's not clear where the line is. Another example, which was not in the brief but goes off of it, is many hotel rooms have something that may or may not be considered a smart TV. A hotel room could have a setup on their TV to allow someone to log into their own Netflix account or use the hotel's own account for their corporate partner like Showtime or whatever, but they're not allowed to install their own programs. It's extremely locked down, walled garden. I honestly have no idea if the government would consider that to be a smart TV. I have no idea if his probation officer would consider that to be a smart TV. I just think that provision doesn't answer that question. Also, it's vague for reasons beyond just smart TVs. I mean, for example, he had gotten in trouble at one point. They seized one of his video game consoles, right, or it was his brother's video game console that was in his room. It was, I think, like a 20-year-old video game console. Some of those would have Internet capabilities. Some would not. The government's solution is go to the probation officer, have them assess the capabilities of the device, but the government doesn't say what capabilities exactly the probation officer is looking for. The smartphone that Mr. Isbell had. It's clear from the condition itself and the language what it is seeking to prevent. It's seeking to prevent your client from any kind of visual access to watch images that depict sexually explicit conduct. It's clear from the condition that is what it is aimed to do, and that is in part modifying computers because it's computers that allow you to have that. So that seems pretty clear. Well, as we explained in the reply, though, that modification helps both sides as interpretations. Isbell was arguing the whole time that, well, computers means things that can go to websites with sexually explicit content because that's what it says in the condition is monitoring for websites with sexually explicit content. That's a totally reasonable interpretation that it only applies to devices with web browsers. So the government, for sure, they have a reasonable interpretation of it, which is what you just said, but it's not the only reasonable interpretation to draw from that language. I think a good example would be a device like the hotel room TV where you can definitely get streaming video off of the Internet, but most hotels these days, they're not offering pornography over their streaming video services. Something like the probation officer was making a big point about access to YouTube, access to Disney+. Those are services that explicitly do not allow pornography. There's no sexually explicit content on those services. Instead, they're kind of hemming and hawing like, well, we want to make sure he's not watching children's movies. We want to make sure he's not looking at other things that are not themselves even mentioned in the condition, are not otherwise banned. He's perfectly allowed to have DVDs of the same content, physical media. He's not even banned from having pornography if it's physical media. So just saying that, well, we know they're looking for sexually explicit websites, I don't think necessarily leads to the government's direct conclusion like they claim. What your client referred to as triggering him, there's a pretty broad universe. It didn't just include pornography. Wouldn't the judge be wise to include that in conditions of release? Well, if the judge had said, we're going to ban you from having children's movies, then that would be a different debate. But the judge didn't do that. Like most of the things the government's pointing out about him talking about being triggered by things, they're weird. They're like giving the ick factor. It's good rhetoric on the government's part, but they're not violations of his conditions. He was allowed to have children's DVDs. Him saying, I was in public and saw a child who came up to talk to me, that's not a violation either. But probation should also be able to monitor whether he's viewing that material. Do you dispute that at all? I guess I'm not sure exactly what the contours of the question are there, Judge Koehler. I mean, we totally agree the probation office can have a monitoring condition, can install monitoring software. We're just looking for something more definitional about what it applies to. I mean, as it stands, they're not monitoring his access to physical media. I mean, sure, if they're doing a home visit and they happen to see something, I mean, I guess that can go into their report, and it's something the probation officer's carrying around in their head. But a lot of the violations the government's referring to, those are Isabel going up to his probation officer and saying, I watched this DVD. I don't think I should have it. It's himself reporting these things because they're not violations of his condition. They weren't things the probation officer was monitoring. Unless there's more questions about computer monitoring, I do want to jump to the medical marijuana condition, which I recognize is a little bit strange since there's no dispute that, generally, a judge cannot impose a condition saying, yes, you're allowed to have medical marijuana. It's federally illegal. We don't dispute that at all. Should we strike it because of that? Absolutely not because, as we described, first of all, there's no jurisdiction for this court to modify the judgment in a way that benefits the government or that harms Isabel because there's no cross-appeal by the government. That's very clear. If a condition is providing for something that is illegal federally, don't we have the inherent authority to strike it? I would disagree with that, Judge. For a couple reasons. First, I realize it is an unpublished case, but Rivera-Orta, that was also an illegal sentence, cross-appeal rule came up, and the court said we can't address it. It was below a mandatory minimum, no dispute that the sentence there was illegal, still cross-appeal rule qualified. And I think it's the same as any other situation where there's a problem with the appeal. If we fail to file an appeal at all, this court couldn't step in to respond to it and say, inherent authority, absence in appeal, we're still going to strike the illegal conditions in Mr. Isabel's judgment. Same with the government's waiver of the issue. I mean, the government, especially at resentencing, their position was leave it as is. That's waiver. I would love if there was an illegal rule exception to waiver because our office would raise it all the time. But we're frequently being strung by waiver rules, even when something is illegal or we're arguing something's unconstitutional. It's no different here. Slight windfall for Mr. Isabel, but that's just the context we're in for this individual case. And on the merits itself, I think that's a very straightforward argument on non-delegation. This case is just Wagner. You replace the word pornography with medical marijuana. How is it a delegation, though, when the district court made the determination that your client should follow all of the rules of the treatment program over his doctor's permitted use of marijuana? So the court's not delegating. The court is making that determination that the rules of his treatment program trump the other condition that the court has permitted. That doesn't sound like delegation. Well, I would say it is delegation for the same reasons as in Wagner. In Wagner, it's the treatment provider decides. That's the treatment provider setting a rule, banning something. But the treatment provider isn't deciding. The court is deciding that the rules of the treatment program trump anything, that you must follow the rules of the treatment program. But the difference is the court is not deciding the rules that are going to apply to Mr. Isabel. And I think some important context, too, is that— But are you saying, then, that any time a treatment provider determines the rules of its own program, that that's a violation of the delegation doctrine? No, because that's already been decided. I mean, it's perfectly— So how is this any different? I would point to the Fourth Circuit's decision in Comer, where they're synthesizing their precedent in Van Donk and this court's precedent in Wagner and explaining how you can draw a rule between the two, which is that you can permissibly impose a condition that requires a defendant to generally comply with rules of treatment, but you cannot delegate a decision on a specific activity. And that's what happened here is the court said, I'm not going to ban you from having medical marijuana with a prescription, but for this specific thing, which I'm already deciding you're allowed to do, I will allow the treatment provider to overrule. Now, there could be conflicts in the future, of course, if they just said, you can have it, treatment provider said, hey, this is a problem, but there's a solution for that. They come back and seek to modify the condition, right? That's what Wagner proposes as a solution. If there's an issue once he's in treatment, they tell the probation officer, probation officer files a petition to modify, and they hash it out then. The court here did the opposite, said, you know, I don't know if this is going to be a situation, but if they overrule my decision, then, Isabel, you come back and modify. That's the opposite of the correct procedure. Do you want to save your time for rebuttal, Mr. Wagner? Yes, unless there's any further questions, I'll reserve those. Okay, thank you. Thank you. Mr. Canestra? May it please the court. Good morning, Your Honors. Jeff Canestra on behalf of the United States. The district court imposed conditions that are both lawful and appropriate to this defendant. Beginning with the internet monitoring condition, this is a condition that's been imposed in roughly the same form for about the last ten years or so. Over that time, it's been imposed and implemented without incident and without defendants claiming that they're unable to understand what's required of them. And the reason for that is simply that both the content of the condition and its structure ensure that defendants, in fact, have adequate notice of what's required of them. The condition itself requires the installation of filtering software on any computer to monitor access to certain types of content, which shows that it's getting at devices from which the defendant could access content over the internet. And on top of that, the condition requires the defendant's... But, counsel, the condition says that during this time, a defendant would need to install filtering software on any computer. It doesn't really address what if there's a computer that isn't capable of that. How would you apply that to an Apple Watch, a Fitbit, something like that? Essentially, the overarching standard is that if a device is capable of accessing content over the internet. Now, there are devices, certainly, that cannot be monitored. A smart TV is an example of that. And so the defendant is not permitted to access that device because it can't be monitored. Other devices, say cell phones, tablets, smart watches, if they're able to access content over the internet, then the defendant cannot use them or possess them unless they can be monitored. And the way that the condition is structured in its nature ensure that the defendant will receive any clarity he needs because it requires him to participate in the probation office's established computer and internet monitoring program. It then requires him, at the outset of supervision, to sign the rules of that program and to abide by the rules of that program. Those rules provide additional information to the defendant about what is and isn't permitted as part of that program and what devices it covers. And on top of that, this is the sort of condition that this court has addressed in cases like Shannon and Edwards. Whether to go out and buy a smart TV or an Apple Watch is not the sort of decision that requires immediate decision making. So just as this court said in Edwards, it's reasonable in those instances for the defendant to run close questions by the probation officer in advance, and that alleviates the principal concern of the vagueness doctrine, which is unknowingly running afoul of a legal requirement, and the secondary concern of the vagueness doctrine. Would that kind of follow the vagueness doctrine, though? If you're saying, yeah, if it's vague, just make sure you talk to your probation officer. No, so, I mean, it's not a general safe harbor, but as long as there's an administrable standard that the probation officer is applying, and that's the case here both through the content of the condition and because the probation officer is implementing the probation office's computer and Internet monitoring program. So it's not a case like in Bickert, which the defendant raises in his reply brief, where it was a standard that it was a condition that was both essentially standardless and heavily defendant-specific, depending on the various fact-specific circumstances about the defendant's offense, defendant's history, the risk that may pose, and so it would invite essentially arbitrary decision-making by the probation officer, which isn't the case here, both because of the content of the condition itself and because these decisions are essentially being made on a device-by-device basis as part of an established program within the probation office. As your honors have recognized this morning, really the only concrete dispute in this case regarded smart TVs. The defendant wanted to be able to access smart TVs. He couldn't do so in compliance with this condition because, as the probation office explained to him repeatedly, smart TVs are not capable of being monitored, and so the defendant can't possess them. The district court itself said that on page 31 of the transcript. The defendant was well aware of that through his course of supervision. For the first five months of his term of supervised release, he was subject to essentially the same language regarding filtering software. During that time, the supervisor of the probation office told him that he could not possess a smart TV. His supervising officer told him repeatedly that things like smart TVs, gaming systems that can access the Internet but that can't be monitored are not permitted under this condition. Both through the condition and in practice, the defendant knows what's required of him, so there isn't actually a vagueness concern, nor is there a concern in this case about arbitrary enforcement. The defendant's briefs in this case offer a variety of hypotheticals that essentially revolve around the theme of publicly accessible points-of-sale devices. Those things just don't fall within the condition's scope. If you go to a gas pump, you can take a gas, but whatever the pump may do on the back end to perform its functions, it's not allowing a user to obtain gas. So the government would ask this court to affirm the special condition regarding Internet monitoring. Next, as to the defendant's delegation challenge to Special Condition 8, as this court has repeatedly held, every other court that has addressed it has agreed, a district court is entitled to order a defendant to comply with the terms of his treatment providers, and the court need not itself decide what those terms are. In fact, in Armour, this court expressly held that a defendant has no right to notice of the conditions and an opportunity to object to them, and so that really disposes of the defendant's argument that as long as he makes some objection, then the district court has to decide that for itself. The court held in Armour, the defendant isn't entitled to that opportunity in the first place. So all the court has to do is say, you must abide by the terms of your treatment provider, and as long as the condition actually is grounded in the defendant's compliance with those rules while the treatment is in effect, there's no delegation problem. Are you asking us to strike the permission to use marijuana provision, or do you agree you've waived that? So we're asking this court to affirm the judgment across the board, and there are a couple of reasons for that. We argue that the judgment itself... I just want to be clear what your answer is to the question. So you're not asking us to strike that? We have not asked this court to strike the condition. We've asked this court to affirm, and there are a couple of reasons for that. I think you would agree that's not something the court can allow a defendant to do. The court cannot grant permission to commit a federal offense or to violate mandatory conditions, and that's exactly why we haven't had to ask this court to strike it, because the court did adopt all those three mandatory conditions, each of which independently prohibit this conduct. Those are the first three conditions in the judgment, and so this conduct is already prohibited three times over. Whether it's prohibited a fourth time over has no effect on the defendant's substantial rights. Now, as to Special Condition 8, that's a discretionary condition. So the court didn't have to say that the use of marijuana will violate Special Condition 8, but the use of marijuana still would violate other conditions, and so it's not actually permitted. On top of that, the defendant, of course, recognizes that the condition doesn't permit the conduct he wants to engage in. His treatment providers always have prohibited this conduct, and so it's the defendant here on appeal who is asking this court to modify the judgment, and he's asking this court to modify the judgment in a way that would be unlawful, because to the extent he's arguing that this should override the mandatory conditions, that's, of course, something that no court has the authority to do. Just to briefly finish on the delegation challenge, the only circumstances where there is a delegation issue with this sort of condition is when the requirement isn't grounded in or tethered to the rules of treatment and the defendant's successful participation in treatment. That was the case in Wagner where the condition essentially just directed a question to the treatment provider without regard to whether it was actually a rule of the treatment or whether it would persist only during the treatment. Here the condition expressly applies only while the defendant is engaging in the treatment program and when the rules of that treatment program prohibit the conduct. Last is to the drug treatment, which didn't come up in the opening argument, but the only objection that the defendant actually made to that condition in the written judgment was that there was a conflict between the written judgment and the oral pronouncement, and that's simply incorrect. Here the court's ruling after hearing arguments on the proposed conditions was on page 22, quote, I'm going to leave it in. Consistent with that oral ruling, the written judgment reflects exactly the same language from the proposed condition regarding drug treatment. How do you reconcile it with the court's statement that I'm going to leave it in, but if they order it and he doesn't think it's called for, doesn't the if they order it conflict with it's mandatory? No, for two reasons. The first is that in the very preceding sentence the court said I'm going to leave it in, and in fact before that the court said after hearing the defendant's history of abusing not only marijuana but methamphetamine and cocaine and his history of convictions regarding the substance, the court itself said on page 22 that's enough to say he'll engage in drug treatment. So the court did make a finding that treatment is necessary here, and then the condition itself says you shall engage in drug treatment as approved by the probation office. So of course the probation office has a role in that, and what the court said, the language that you're referring to said if they order it and you disagree, then you can come back to me. So it wasn't just if they order it. They're going to order it, but if he disagrees with what they order, then at that point the court was inviting the defendant to come back to contest the conditions if he had any further concern. Unless your honors have any further questions, the government asked this court to affirm. Thank you, Mr. Kinster. Mr. Roy. Thank you, Judge. I want to start with the substance abuse treatment condition since we didn't get to that in the opening part. Isabel is on supervision right now. He was released about a month ago. Last I spoke to him, his probation officer had assessed him and told him he would not need to do treatment. So the probation officer seems to be applying it in the way that we were reading from the transcript, not from the way it was written. Now, I don't know if that's all. This is like not in touch with him all the time. This is kind of a game of telephone. I can't guarantee that's still the case, but I think that our position about why the oral argument controls is exactly like you were saying, Judge St. Eve. I think that's how the probation office is actually applying it on the ground. If we find that the oral pronouncement is ambiguous, why wouldn't the written condition clarify that ambiguity? If you find it is ambiguous, then you would, of course, go to the written condition. Our position is just that it's not ambiguous. And I disagree with the government that we waived any objection to the written condition. We're allowed to raise responses and reply to things the government raises. We attacked the condition that we thought he was actually under. The government responded by saying, no, he's under a different condition. So we responded to that. That's why the federal rules allow reply briefs. Moving on to the medical marijuana condition, I also disagree with the government's characterization that we're the ones asking to modify it in a way that's illegal. In terms of marijuana being federally illegal, that's already in the condition. He's not going to be in treatment for forever. He has eight years of supervision ahead of him. So that's not the part we're asking to modify. That's in. And I think reading the judgment as a whole, if he uses medical marijuana in the future pursuant to that exception, I don't see how the government's going to be able to then revoke him saying, well, the mandatory conditions say no breaking federal law. General rules of construction, the specific supplants, the generic. And then lastly, in regards to the smart TVs, I wanted to point to page 10 of the reply. Judge Staney, that's where we respond to the government's argument that he, of course, knows of smart TVs. We do say in there smart TV itself is vague. But starting from there is also our general argument, which is primarily that it's the condition as written we're concerned about, not what the judge said at sentencing. And I want to point out again that he's going to be on supervision for the next eight years. Devices that surround him are going to change. It's not just going to be smart TVs. And the government says gas pumps only pump gas. They do stream video, too. They don't stream pornography. But they stream advertisements with scantily clad people. They stream advertisements with children. The exact same things Judge Kohler, you were saying the probation office wanted to monitor. So unless there's any further questions, I'll sit down. Thank you, Mr. Roy. Thanks to both counsel. The case will be taken under advisement.